IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER SUTTON,

                Plaintiff,                   OPINION & ORDER

    v.
                                              13-cv-173-wmc

JANET NAPOLITANO, Secretary,
Department of Homeland Security;
ALEJANDRO MAYORKAS, Director,
U.S. Citizenship and Immigration Services;
KAY F. LEOPOLD, District Director,
Milwaukee Field Office, U.S. Citizenship
And Immigration Services; and
ERIC HOLDER, U.S. Attorney General,
U.S. Department of Justice,

                Defendants.

---

      Plaintiff Christopher Sutton seeks a writ of mandamus under the Mandamus and Venue Act ("MVA") or an order under the Administrative Procedure Act ("APA") that would compel U.S. Citizenship and Immigration Services ("USCIS") to (1) respond to an order of the Board of Immigration Appeals ("BIA") and (2) rule on his I-130 petition for his spouse's permanent residency. He also challenges the constitutionality of the Adam Walsh Child Protection and Safety Act of 2006 ("AWA") as applied to him. Defendants have filed various motions under Rule 12(b)(1) to dismiss the case for lack of subject matter jurisdiction. (Dkt. #49.)[1] The court will grant the last of these motions in part and dismiss Sutton's constitutional claims, because those claims are not ripe, but will deny that same motion with respect to Sutton's claims under the APA and the MVA. In light of the impending deadline for filing motions for summary judgment, the court will also extend that deadline to December 16, 2013 to file or revise such motions.

---

[1] The current motion before the court is defendants' Second Amended Motion to Dismiss for Lack of Jurisdiction. Therefore, the court will deny the preceding two Motions to Dismiss (dkt. ## 41 and 44) as moot.

## STATUTORY AND REGULATORY SCHEME

Immigration is governed by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the accompanying regulations. If an alien wishes to apply for adjustment of status to permanent residency under the INA, "[a]n immigrant visa must be immediately available." 8 C.F.R. § 245.2(a)(2). This generally means that "the alien beneficiary may file the adjustment application only *after* the Service has approved the visa petition." 8 C.F.R. § 245.2(a)(2)(B) (emphasis added).

An exception to this general rule exists for immediate relatives of U.S. citizens (a category that by definition includes spouses), since there are no numeric limitations on visas for immediate relatives. *See* 8 U.S.C. § 1151(b)(2)(A)(i).

Under 8 C.F.R. § 245.2(a)(2)(B), an alien may file an adjustment application, pursuant to 8 U.S.C. § 1154(a)(1)(A)(i) ("Clause (i)"), if approval of a visa petition filed by their U.S. citizen spouse is pending that would make a visa immediately available.[2]

To begin this process, the citizen spouse must file an I-130 petition on behalf of the alien spouse. *See* 8 C.F.R. § 204.1(a)(1). The alien spouse may concurrently or thereafter file his or her application for adjustment of status. 8 C.F.R. § 245.2(a)(2)(B). If it is determined after investigation that the facts in the petition are true and the alien application is in fact an "immediate relative," the adjudicator "shall . . . approve the petition." 8 U.S.C. § 1154(b).

Under 8 U.S.C. § 1154(a)(1)(A)(viii)(I), however, this statutory right to petition "shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition described in [C]lause (i) is filed." The term "specified offense against a minor" is

---

[2] The text of 8 U.S.C. § 1154 states that petitions should be filed with the Attorney General, but the Homeland Security Act of 2002, 2002, Pub. L. No. 107-296, § 451(b), 116 Stat. 2135, 2196, transferred this authority to USCIS. *See also* 8 C.F.R. § 103.2 (providing generally the procedures for submission and adjudication of benefit requests and placing adjudicatory authority with USCIS).

defined in the AWA at 42 U.S.C. § 16911(7) and includes "[c]riminal sexual conduct involving a minor" and "[a]ny conduct that by its nature is a sex offense against a minor." 42 U.S.C. § 16911(7)(H), (I). Thus, if a citizen has been convicted of a "specified offense against a minor" and does not satisfactorily demonstrate to the Secretary that he or she poses no risk to his immediate relative, he is not eligible to petition for that relative at all and the pending petition will be denied on those grounds. Moreover, without the "immediate relative" classification, the related visa will not be considered "immediately available" for the alien spouse, making that spouse ineligible for adjustment of status.

## ALLEGATIONS OF FACT

Plaintiff Christopher Sutton is a natural-born U.S. citizen residing in Madison, Wisconsin. He is married to Volha Sutton, who is not a U.S. citizen. Christopher and Volha have two children. In September 2007, Christopher filed a I-130 Petition for Alien Relative with USCIS, and Volha filed an I-485 Application to Adjust Status and become a permanent resident.

Unfortunately, Christopher had been convicted in 1997 of 3rd degree sexual assault in violation of Wis. Stat. § 940.225(3). The sexual assault occurred when he was 20 years old and involved a minor, who was 15 years of age and thus unable to consent as a matter of Wisconsin law. Because of this conviction, USCIS contacted Christopher on April 23, 2008, asking for: (1) details surrounding the arrest, final disposition, and sentencing in the case; (2) evidence of rehabilitation demonstrating he posed no risk to his wife's safety and well-being; (3) evidence demonstrating exemplary behavior to the community; and (4) any other character evidence. Christopher timely responded.

On September 3, 2008, Christopher received a Notice of Intent to Deny ("NOID") his I-130 petition, which indicated that he had failed to prove that he posed no risk to his wife and gave him an additional 30 days to provide further evidence. On September 11, 2009, Sutton

3

received a notice that his I-130 petition had been denied, because USCIS had determined he was "ineligible to file a petition for immigrant status due to [his] prior criminal history involving the sexual assault of a minor." (Compl. Exh. F (dkt. #2-11).)

Following an unsuccessful appeal to USCIS, Christopher appealed to the Board of Immigration Appeals ("BIA"). On July 15, 2011, the BIA issued its decision, finding "that a remand for further development of the record [was] appropriate." (Compl. Exh. H (dkt. #2-13) ("Remand Order").) It posed eight questions to the parties and asked that they consider and respond to them "[t]o the extent that one or more of the issues . . . [were] relevant in this case and have not been addressed by the Field Office Director or by the parties on appeal." (*Id.*) Finally, the BIA ordered that "[t]he record is remanded for further proceedings consistent with this order." (*Id.*)

Christopher responded with a brief that he submitted to the BIA and USCIS to answer the eight questions. (Compl. Exh. I (dkt. #2-14).) He also submitted unsolicited documents to USCIS on multiple occasions before October 2012. On October 22, 2012, USCIS issued a new Request for Evidence asking for: (1) evidence of rehabilitation not previously submitted; (2) evidence of exemplary behavior to his community since his arrest not previously submitted; (3) certified records indicating successful completion of counseling or rehabilitation programs; (4) certified evaluations by licensed professionals; (5) evidence not previously submitted demonstrating "intervening good and exemplary service" to the community or in the uniformed services; and (6) news accounts and court transcripts describing the nature and circumstances of the offense against a minor, as well as any other criminal, violent, or abusive behavior incidents. (Compl. Exh. K (dkt. #2-15).) Christopher provided a response. On May 6, 2013, USCIS issued another NOID, requesting additional evidence. On June 4, 2013, Christopher responded to the request. Christopher alleges that he cannot fully and adequately respond to USCIS's requests for additional evidence, however, without receiving its responses to the BIA's Remand Order. USCIS has not yet issued a decision in his case.

4

Christopher now asks this court to (1) compel defendants to comply with the BIA's Order "that they 'consider and respond' to the 8 question remand," (Second Amended Compl. (dkt. #47) 12); and (2) decide the pending I-130 petition. He also asks the court to declare the AWA unconstitutional as applied to him.

OPINION

As courts of limited subject matter jurisdiction, federal courts "possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted). Therefore, this court cannot even consider the merits of a case unless first determining that it has subject matter jurisdiction to do so. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981). The burden of proof on a Rule 12(b)(1) issue is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "On a motion to dismiss under Rule 12(b)(1), the court is not bound to accept the truth of the allegations in the complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000) (citing *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)).

Christopher Sutton's Complaint alleges that this court has subject matter jurisdiction under the Fifth Amendment of the Constitution; 28 U.S.C. § 1331; 8 U.S.C. § 1329; 5 U.S.C. §§ 555(b) and 706(1); and 28 U.S.C. § 1361.[3] The court will consider these bases for jurisdiction in turn, beginning with Christopher's constitutional claim.

---

[3] Christopher also cites to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, as support for this court's authority to grant the declaratory and injunctive relief that he seeks, but the Act is procedural only and did not repeal or modify "the limited subject matters which alone Congress had authorized the District Courts to adjudicate." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S.

5

## I. Plaintiff's Constitutional Claim

Plaintiff asks in his Complaint that this court declare the AWA unconstitutional as it applies to him. (*See* Second Amended Compl. (dkt. #47) 13.) Specifically, he argues that the right to marriage "necessarily incorporates the right to intimacy, live together, raise children, and build a household." (Pl.'s Resp. (dkt. #51) 8.) He would be deprived of these rights, however, were his wife forced to leave the United States. Therefore, he argues that since the AWA bars him from petitioning for his foreign spouse so that she is eligible for adjustment of status, it operates to deprive him of those "incorporated" rights. (*Id.* at 10.)

As interesting as this argument is, the government correctly points out that plaintiff has neither demonstrated nor argued that his as-applied constitutional claim is ripe for review. "The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n.18. (1993). "Ripeness is peculiarly a question of timing." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)). "Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). Thus, a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

---

667, 672 (1950). Therefore, the Act neither provides for an independent grant of subject matter jurisdiction, nor does Sutton argue as such.

Plaintiff's allegations that the AWA has deprived him of the "incorporated" rights of marriage, therefore, suffer from a fundamental flaw: his I-130 petition has not yet been adjudicated, making the present disagreement as to the application of the AWA to his case entirely abstract. Rather than being based on a denial of his application, plaintiff's claim is based on the assumption that his I-130 petition *will be denied* by USCIS's interpretation and application of the AWA -- a future event that may or may not occur. At this stage, there has been no formalization of the USCIS determination, nor have the effects of the AWA as plaintiff describes them materialized in a concrete way. Therefore, plaintiff's current constitutional claim against the defendants is based entirely on a contingent future event that may or may not occur as he predicts, making it unripe for adjudication.[4]

In fairness, plaintiff alleges (albeit in the context of the APA and not the Constitution) that he is suffering harm "because of his inability to obtain a lawful status for his spouse and that he is left 'in a state of 'limbo" to languish there indefinitely." (Pl.'s Resp. (dkt. #51) 19.) A mere "state of limbo," without more, is not the type of harm that makes a controversy ripe for adjudication. *See Abbott Labs.*, 387 U.S. at 149 (basic rationale of ripeness is to avoid interfering with agencies until decisions effects are "felt in a *concrete way* by the challenging parties") (emphasis added).

As previously noted, ripeness is intended not only to protect courts from entangling themselves in abstract disagreements but also to protect *agencies* from premature and potentially unnecessary judicial interference. *Id.* at 148-49. Determining whether

---

[4] In some cases, where a future event is "virtually a certainty," a case may be ripe for adjudication notwithstanding that the event has not actually occurred yet. *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974). This is not such a case, since a NOID leaves open the possibility that the I-130 petition may be favorably adjudicated. For example, see William R. Yates, *Requests for Evidence (RFE) and Notices of Intent to Deny (NOID)* (Feb. 16, 2005), *available at* http://www.uscis.gov/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2005/rfe021605.pdf (last visited Oct. 18, 2013), which offers guidance to USCIS adjudicators as to RFEs and NOIDs. The memo indicates that NOIDs should be used to offer a filer who has not met his or her burden through evidence already submitted "the best chance to overcome the deficiency if possible."

7

administrative action is ripe for judicial review thus requires an evaluation of "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). "Hardship" in this context generally requires that the impact on the challenging party be "direct and immediate." *Abbott Labs.*, 387 U.S. at 152. In contrast, a controversy may not be ripe where "no advance action is required" of the party bringing suit or where "no irremediable adverse consequences flow from requiring a later challenge." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967).

While the issue plaintiff raises is a legal one involving a law's constitutionality, and thus potentially appropriate for a court's resolution, he has not argued, and the court does not find, that simply existing in a "state of limbo" constitutes the kind of direct and immediate impact that would justify this court's interference in a pending agency action. In addition, case law does not suggest such an argument would be fruitful. *See, e.g.*, *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 59-63 (1993) (promulgation of immigration regulations did not alone give rise to ripeness; ordinarily, ripeness would arise "when the INS formally denied the alien's application on the ground that the regulation rendered him ineligible for legalization," unless he had experienced "prefiling rejection" pursuant to INS policy); *Toilet Goods Ass'n, Inc.*, 387 U.S. at 164 (litigation not ripe when challenged regulation merely provided that Commissioner "may authorize inspectors to examine certain processes or formulae" but challengers had to take no action before then); *Rock Energy Co-op. v. Village of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010) (litigation not ripe when there was no imminent threat of eminent domain proceedings and the injury alleged was essentially "living . . . under the Sword of Damocles, knowing that its property rights can be cut off . . . at any moment"). Thus, the court lacks

subject matter jurisdiction over plaintiff's constitutional claims and will dismiss them without prejudice.[5]

## II. The Immigration and Nationality Act (8 U.S.C. § 1329)

Plaintiff alleges in his Second Amended Complaint that this court has jurisdiction under 8 U.S.C. § 1329, the Immigration and Nationality Act ("INA"), yet fails to expand on this argument in his brief. This failure is unsurprising, given INA's plain text, which states that "[n]othing in this section shall be construed as providing jurisdiction for suits *against the United States or its agencies or officers.*" 8 U.S.C. § 1329 (emphasis added). Thus, that Act does not grant this court jurisdiction over Sutton's claims.

## III. The Administrative Procedure Act (5 U.S.C. §§ 555 and 706) and the Mandamus Act (28 U.S.C. § 1361)

Finally, Sutton argues that this court has federal subject matter jurisdiction under the APA, through 28 U.S.C. § 1331, and the MVA. . Here, Sutton seeks an order from this court compelling USCIS to respond to the BIA's Remand Order and adjudicate his I-130 petition. Section 555(b) of the APA states that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Section 706 of the APA states in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The

---

[5] Because the court finds that plaintiff's constitutional claims are not yet ripe, it need not consider defendants' alternative argument that plaintiff lacks standing. In any event, the standing question, which asks whether the plaintiff has suffered "some threatened or actual injury" as a result of the challenged action, "bears close affinity to questions of ripeness – whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 & n.10 (1975).

9

>  reviewing court shall-- (1) compel agency action unlawfully withheld or unreasonably delayed.

5 U.S.C. § 706(1). The MVA states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

While the APA does not itself grant subject matter jurisdiction to federal courts to review agency action, 28 U.S.C. § 1331 in conjunction with the APA does. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977). Even more straightforwardly, the MVA's plain text grants jurisdiction to district courts in mandamus actions. *See* 28 U.S.C. § 1361. Nevertheless, courts have split on the question of whether these statutes provide a district court with subject matter jurisdiction to adjudicate a request that USCIS *undertake* some sort of action. *See Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 544-45 (S.D.N.Y. 2008) (detailing the split of authority and cataloguing cases).

### A. Jurisdictional and Other Limitations

In analyzing this question, the court begins with the distinction between "true jurisdictional limitations and other types of rules." *Minn-Chem, Inc.*, 683 F.3d at 851. This court can do almost nothing without first having subject matter jurisdiction over the case. *See Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). "Because the consequences that attach to the jurisdictional label may be so drastic," the Supreme Court has "tried in recent cases to bring some discipline to the use of this term." *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011). In *Henderson* itself, the Court held that "a rule should not be referred to as jurisdictional unless it governs a court's *adjudicatory capacity*." *Id.* (citing *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243-44 (2010)) (emphasis added). In contrast, rules that define the kind of conduct a statute *reaches*, for example, are essentially defining the kind of conduct a statute *prohibits*, which goes to the merits of a dispute, not to

10

the court's jurisdiction. *Morrison v. Nat'l Aus. Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010). As the Supreme Court explained in *Henderson*, "even if important and mandatory," such rules should not be given the jurisdictional brand. 131 S. Ct. at 1203.

Thus, the "general rule is that if the complaint states a case arising under the Constitution or federal law, proper federal subject matter jurisdiction exists even though on the merits the plaintiff may have no cognizable federal claim." *Graf v. Barker*, 409 F. Supp. 571, 573 (E.D. Wis. 1976) (citing *Bell v. Hood*, 327 U.S. 678 (1946)); *cf. Miller v. Herman*, 600 F.3d 726, 731-32 (7th Cir. 2010) (noting that, when a plaintiff had to show that windows were a "consumer product" within the meaning of a statute to prevail, and not just to get into federal court, "defendants' Rule 12(b)(1) motion was in fact an indirect attack on the merits" and should have been treated as a Rule 12(b)(6) motion). There is an exception even to this general rule: as explained by the Supreme Court in *Bell*, "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purposes of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682-83. Beyond this narrow exception, a district court has federal question jurisdiction over cases arising under the Constitution or federal law, even if a case seems fated to fail on its merits. *See id.* at 682 ("If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.").

Turning to the context of this case, the Seventh Circuit addressed the difficulty of drawing a line between subject matter jurisdiction and merits in the immigration context in *Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383 (7th Cir. 2003). In that case, a native and resident of Pakistan thought she had secured the right to live in the United States after "winning" a place in the so-called "diversity visa lottery" program, but bureaucratic delay and circumstances beyond her control prevented her from completing her application to secure

11

that visa before her opportunity expired. *Id.* at 384. She then brought suit under the APA and MVA to compel the government to process her visa application even though the deadline had passed. The district court dismissed her claims for lack of subject matter jurisdiction, finding that "because Ahmed had not shown that she was entitled to mandamus relief, it did not have subject-matter jurisdiction over her claim." *Id.* at 385. In affirming the dismissal, the Seventh Circuit found "that the district court was empowered to adjudicate the mandamus petition and the APA claims before it, but that it correctly determined *on the merits* that neither the petition for mandamus nor the claim for relief under the APA could be granted." *Id.* at 388 (emphasis added).

The Seventh Circuit's discussion in *Ahmed* is instructive. As an initial matter, the court noted that "[n]o one has suggested that [Ahmed's] APA claim seeking to compel a federal agency . . . did not fall under the general federal-question jurisdiction conferred in 28 U.S.C. § 1331." *Id.* at 385. Although the "mandamus claim . . . [gave] rise to more questions," the court went on to explain that:

> In our view, it is necessary to distinguish between the court's power to adjudicate the petition and the court's authority to grant relief. Only the former necessarily implicates the subject-matter jurisdiction of the court; the latter will depend on whether the statute on which the plaintiff is relying imposes a clear duty on the officer or employee of the United States.

*Id.* at 385-86. Accordingly, the Seventh Circuit explained that a conclusion that one of the three prerequisites for a writ of mandamus to *issue* is lacking "should lead the district court to deny the petition, not because it now realizes that it had no power to be thinking about the case in the first place, but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief." *Id.* at 387. For this reason, the court ultimately held that a district court has federal jurisdiction over an action under § 1361 "unless the claim is so frivolous that it fails the *Bell v. Hood* test." *Id.* at 386-87.

In keeping with the recent Supreme Court holdings previously discussed and the Seventh Circuit's decision, Sutton need not demonstrate entitlement to *relief* under either the APA or the MVA for this court to exercise subject matter jurisdiction over those claims. Most telling in *Ahmed* is the court's ultimate holding was that even though the plaintiff's claim was "plausible enough to engage the court's jurisdiction," she was *not* entitled to relief under either the APA or the MVA. *Id.* at 387-88. Rather, to establish jurisdiction under 5 U.S.C. § 706(1), Sutton must state a non-frivolous claim "that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). Having plausibly pled that his claim "arises under" the APA, this court has jurisdiction pursuant to 28 U.S.C. § 1331 to consider the claim, even if it ultimately fails on the merits. Similarly, unless Sutton's claim for mandamus relief is "patently frivolous," *Ahmed*, 328 F.3d at 386 (citation omitted), this court has jurisdiction to determine whether the three prerequisites to mandamus relief have been satisfied: (1) a clear right to the relief sought, (2) a duty by defendants to perform the act, and (3) the lack of another adequate remedy.[6] *Ahmed*, 328 F.3d at 386-87.

Here, the relief Sutton seeks under either the APA or the MVA is the same: orders compelling USCIS to respond to the BIA Remand Order and to adjudicate Sutton's pending I-130 petition. Indeed, in cases seeking compelled adjudication of immigration status, plaintiffs frequently move for relief under both statutes. *See, e.g.*, *Lindems v. Mukasey*, 530 F. Supp. 2d 1044, 1045 (E.D. Wis. 2008) (alien brought suit asking for an order to compel federal officials to act on his application for permanent residency under both APA and MVA); *Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1057 (W.D. Wis. 2007) ("Like most other parties seeking an

---

[6] Admittedly, the holding in *Ahmed* appears to conflict with another Seventh Circuit case decided around the same time, *Kitphothiyan v. Ashcroft*, 74 Fed. App'x 623 (7th Cir. 2003). In *Kitphothiyan*, the Seventh Circuit affirmed a dismissal for lack of jurisdiction because one of the requirements for mandamus *relief* had not been met. *Id.* at 627. Given the general rule that courts should not disguise a decision on the merits as a jurisdictional dismissal, and given the holdings of recent Supreme Court cases like *Henderson* and *Morrison*, the court finds the reasoning of the *Ahmed* court more persuasive.

13

adjudication of an application for an adjustment of status, plaintiff seeks to compel action under the Administrative Procedure Act and the Mandamus Act."). Even so, the court will consider both potential grounds for subject matter jurisdiction. Sutton has not yet elected under which act to proceed.

### B. APA Jurisdiction

As regards the APA, Sutton alleges in his Second Amended Complaint that USCIS has failed (1) to adjudicate his petition, and (2) to comply with the BIA Remand Order by providing answers to the eight questions before adjudicating his petition. (*See* Second Amended Compl. (dkt. #47) ¶ 42.) Defendants do not contest that these are "discrete" agency actions. The remaining question for jurisdictional purposes is whether Sutton's claims are substantial enough to be non-frivolous, because each concerns actions he alleges that USCIS is *required* to take. The court must therefore determine: (1) whether USCIS must adjudicate his I-130 petition at all;[7] and (2) whether USCIS must respond to the questions in the Remand Order before adjudicating that petition. Only if the claims as alleged are "wholly insubstantial and frivolous," *Bell*, 327 U.S. at 682-83, will this court dismiss them for lack of subject matter jurisdiction.

Because 8 U.S.C. § 1154(b) indicates in pertinent part that if it is determined that the facts stated in the petition are true and the alien is an immediate relative, the adjudicator "*shall* . . . approve the petition," it would appear that I-130 petitions must, at some point, be adjudicated. *Cf. Iddir v. Immigration & Naturalization Servs.*, 301 F.3d 492, 499-500 (7th Cir. 2002) (finding that "nondiscretionary language," including the word "shall," indicated that appellants "[had] a right to have their cases adjudicated"); *Saleem*, 520 F. Supp. 2d at 1054

---

[7] Sutton does not argue that the adjudication must be one favorable to him, nor would such an argument have merit. *See Norton*, 542 U.S. at 65 ("Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be.").

14

(noting that even where statutes did not contain an explicit command to adjudicate an application for adjustment of status within a particular time period, "the regulations are drafted on the assumption that defendants *will* decide each application") (emphasis in original). This reading is strengthened by the language of 5 U.S.C. § 555(b), which states that "within a reasonable time, each agency *shall* proceed to conclude a matter presented to it." Taken together, these provisions strongly suggest that while USCIS has discretion in the *outcome* of an I-130 petition, it does not have the discretion not to make a decision at all.

Additionally, as noted by this court in *Saleem*, "a right to request relief inherently implies a corresponding obligation to respond." *Saleem*, 520 F. Supp. 2d at 1054 (citing *Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004)); *see also Lindems v. Mukasey*, 530 F. Supp. 2d 1044, 1046 (E.D. Wis. 2008) (same). Without such an obligation, "defendants could delay a decision indefinitely and thus render meaningless the right to apply for adjustment of status." *Lindems*, 530 F. Supp. 2d at 1046.

Finally, defendants do not appear to contest that USCIS does, in fact, have a duty to adjudicate I-130 petitions *at some point (*though they argue that there is no duty to have already adjudicated the petition at *this* point). Thus, the court finds that Sutton has stated a non-frivolous claim that "arises under" 5 U.S.C. §§ 555(b) and 706(1), and that it can exercise jurisdiction over that claim.

What defendants *do* contest is the scope of their alleged duty to "comply" with the BIA's Remand Order, arguing that Sutton misconstrues what is required of them on remand. (Def.'s Reply (dkt. #54) 9.) Sutton essentially contends that the Remand Order requires USCIS to issue a response to the eight questions that the BIA posed before it adjudicates the I-130. He also points to 8 C.F.R. § 1003.1(g), which states that "decisions of the Board . . . shall be binding on all officers and employees of the Department of Homeland Security," as creating a duty to obey the BIA. Defendants argue that there is no statutory or regulatory requirement that compels them to answer those questions, as the Remand Order did not expressly require

15

USCIS to submit the answers to those questions either to Sutton or to the BIA. Rather, the Remand Order states only that (1) "a remand for further development of the record is appropriate" and (2) "[t]o the extent that one or more of the [six] issues presented . . . are relevant in this case and have not been addressed by the Field Office Director or by the parties on appeal, we ask that the parties consider and respond." (*See* dkt. #21.) The Order then states that "in the event that the Field Office Director denies this visa petition again," the parties are advised to include a jurisdictional statement in any further appeal to the BIA addressing the final two questions. (*See id.*)

While decisions of the BIA are binding on all employees of the Department of Homeland Security as per the regulations, it is by no means apparent that USCIS has *any* duty to do what Sutton contends it must, which is to provide him with responses to the questions before adjudicating the I-130 petition. Moreover, Sutton does not merely seek compliance with the binding order; rather, his suit asks that the court ultimately interpret the highly discretionary language in the BIA Remand Order as describing an action that USCIS is required to take. Still, the court finds that these claims are sufficiently non-frivolous to go forward, if just barely: USCIS does have a duty to comply with orders of the BIA. Sutton's allegation that USCIS has not done so may be unconvincing, but it does not quite rise to the level of "wholly insubstantial and frivolous" such that this court lacks subject matter jurisdiction over its adjudication. *Bell*, 327 U.S. at 682-83.

Defendants' other arguments that the court lacks subject matter jurisdiction under the APA are wholly unavailing. They argue first that this court lacks jurisdiction because there has been no final agency action. (*See* Second Amended Mot. to Dismiss (dkt. #49) 10-16.) They point to 5 U.S.C. § 704, which makes reviewable "final agency action," defined as action that marks the consummation of the decision making process and from which "legal consequences flow," *Bennett v. Spear*, 520 U.S. 154, 178 (1997), and argue that the lack of a final agency action deprives the court of subject matter jurisdiction. The court will not devote much time to

16

this argument, since even the cases defendants cite indicate that the APA's final agency action requirement is *not* jurisdictional in nature. *See, e.g.*, *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 184 (D.C. Cir. 2006); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003). Thus, "even if [the court] were to infer by negative implication that agency conduct not amounting to final agency action is not 'reviewable,' that inference would not deprive a federal court of any jurisdiction it otherwise has." *Trudeau*, 456 F.3d at 183-84.[8]

Second, defendants lay out numerous developments in Sutton's case since its filing, pointing out that *some* action was taken, in the form of a NOID, as recently as May 6, 2013 and that Sutton responded on June 5, 2013. (*See* Second Amended Mot. to Dismiss Exh. A (dkt. #49-1).) For this reason, they argue, the delay Sutton alleges cannot possibly be "unreasonable." While these events go to the merits of Sutton's claim of *unreasonable* delay -- and may well affect his ability to prevail on his APA claim, *see Saleem*, 520 F. Supp. 2d at 1058-59 (listing "length of the delay" as a factor for courts to consider in assessing reasonableness of delay) -- they do not deprive the court of jurisdiction. While defendants may ultimately be able to demonstrate the delay Sutton alleges was not at all unreasonable and thereby prevail on the merits, that possibility does not deprive the court of subject matter jurisdiction under the APA. *Cf. Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89-90 (1998) (noting that where petitioners' rights to recover on their complaint are sustained on one construction of the Constitution or federal law, and defeated on another, the district court has jurisdiction).

---

[8] "[W]here delay will inflict such impairment on a party's rights as to amount to a violation of a legal right, it may be considered 'final action' subject to judicial review." 2 Fed. Proc., L. Ed. § 2:319. Thus, "[t]he claim of unlawful or unreasonable delay establishes court jurisdiction even though there has been no final agency order, and the relief sought is e.g. an order requiring the agency to hold a hearing." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Nat'l Mediation Bd.*, 425 F.2d 527, 535 n.3 (D.C. Cir. 1970) (citations omitted).

Finally, defendants argue in their initial motion that Sutton's APA claims are not ripe, since they are not currently fit for judicial decision and there is no hardship to delaying court consideration. (*See* Second Amended Mot. to Dismiss (dkt. #49) 11-16.) This argument appears to have arose from defendants' confusion over the nature of Sutton's APA claim, believing he intended to challenge a *denial* of his I-130 petition, rather than a refusal to decide. Were this Sutton's actual challenge, defendants would be correct in finding Sutton's claims not yet ripe at this time (just as his constitutional claims, premised on a hypothetical denial of the I-130 petition, are not currently ripe). In actuality, Sutton is asking the court to compel a decision -- any decision -- on the I-130 petition, which presents an entirely different claim. To dismiss on ripeness grounds given what Sutton is actually requesting strikes the court as problematic, since to hold that claims to compel agency action are not ripe where no final agency action has yet taken place would be to eviscerate the force behind 5 U.S.C. § 706(1)'s permission to "compel agency action unlawfully withheld or unreasonably delayed." Accordingly, the court declines to dismiss Sutton's APA claims on ripeness grounds.

### C. Mandamus Jurisdiction

To state a claim for mandamus relief, a plaintiff must demonstrate that: (1) he has a clear right to the relief sought; (2) the defendant has a duty to perform the act in question; and (3) there is no other adequate remedy available. *Ahmed*, 328 F.3d at 387. As previously noted, a district court has jurisdiction to determine whether these prerequisites have been satisfied "unless the claim is so frivolous that it fails the *Bell v. Hood* test." *Id.* at 386.

Relief by means of mandamus often "goes hand in hand with" relief under the APA. *He v. Chertoff*, 528 F. Supp. 2d 879, 884 (N.D. Ill. 2008) (citing *Xin Liu v. Chertoff*, No. 06-2808, 2007 WL 2433337, at *3 (E.D. Cal. Aug. 22, 2007); *see also, e.g.*, *Hernandez-Avalos v. Immigration & Naturalization Servs.*, 50 F.3d 842, 845 (10th Cir. 1995) (noting that "[a] mandatory injunction [issued under the APA] . . . is essentially in the nature of mandamus.

Thus, jurisdiction for its issuance can be based on either § 1361 or 1331, or both.") (quoting *Carpet, Linoleum and Resilient Tile Layers Local 419 v. Brown*, 656 F.2d 564, 566-67 (10th Cir. 1981) (alterations in original)); *Sawan v. Chertoff*, 589 F. Supp. 2d 817, 822-23 (S.D. Tex. 2008) (noting that plaintiffs must make "a similar showing" for mandamus relief and injunctive relief under the APA). There is, therefore, neither a reason to repeat the analysis as to Sutton's right to relief sought and defendants' duty to adjudicate Sutton's I-130 petition, nor to respond to the BIA remand order; there is also no discernible reason why USCIS would potentially have a duty to act under the APA, which allows a court to compel "required agency action," but not under the MVA, which allows a court to compel action the defendant has a "duty to perform."

Though defendants are correct that mandamus is "an extraordinary remedy . . . to be employed only under exceptional circumstances," *Ass'n of Am. Med. Colleges v. Califano*, 569 F.2d 101, 110 n.80 (D.C. Cir. 1977), that contention again goes to whether Sutton will ultimately be entitled to the mandamus relief he seeks, not whether the court has jurisdiction to entertain a request for that relief. Indeed, most of defendants' arguments involving the MVA assert that Sutton's claims are "without merit." (*See, e.g.*, Defs.' Reply (dkt. #54) 13.) Defendants will have an opportunity to challenge the merits of Sutton's mandamus claim; for now, it is sufficient that the court finds his claim "plausible enough to engage the court's jurisdiction." *Ahmed*, 328 F.3d at 387.[9]

---

[9] Defendants do not argue that Sutton has an adequate alternative remedy, but even considering that possibility, the court finds it plausible that he does not. First, as this court held in *Saleem*, "'[w]aiting' is not a 'remedy.'" *Saleem*, 520 F. Supp. 2d at 1061. Second, it is true that some courts have held the existence of a remedy under the APA precludes mandamus relief. *See, e.g.*, *Wyandotte Nation v. Salazar*, No. 11-2656-JAR-DJW, 2013 WL 1497821 (D. Kan. Apr. 10, 2013), at *6 ("The availability of a remedy under the APA technically precludes [the Nation's] alternative request for a writ of mandamus.") (quoting *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997)). Given the Seventh Circuit's holding in *Ahmed*, which indicated that even a conclusion that one of the prerequisites of mandamus is *missing* does not deprive the court of subject matter jurisdiction, and given that it is still unclear whether Sutton does, in fact, have a remedy under the APA, the court finds that it has subject matter jurisdiction in this case.

Finally, defendants also argue in their initial motion that Sutton's claims under the MVA are moot. Mootness "has two aspects: when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (internal quotation marks omitted). Defendants contend that because Sutton asks this court to compel action on his pending I-130 petition, and because USCIS has been active in his case since October 22, 2012, his claim is therefore moot.

The court does not find that the controversy in this case has been rendered moot by this action of the USCIS to date. Sutton has requested as relief not just that USCIS take "some sort of action" in his case, but also that it issue a response to the BIA's remand order and decide his pending I-130 petition. (*See* Second Amended Compl. (dkt. #47) 12-13.) USCIS has done neither. Again, the court does not intend to opine on the merits of Sutton's requests; it simply notes that the issues Sutton raises are still "live" and that he has a concrete interest -- adjudication of his pending petition -- in the outcome of this lawsuit.

### ORDER

IT IS ORDERED that:

1) Plaintiff Sutton's constitutional claims are DISMISSED without prejudice for lack of ripeness.

2) Defendants' motion to dismiss for lack of subject matter jurisdiction is in all other respects DENIED.

3) The deadline for the parties to file any dispositive motions or revised motions is extended to December 16, 2013. In light of the holidays, responses shall be due on or before January 15, 2014, with replies due by January 31, 2014.

Entered this 15th day of November, 2013.

BY THE COURT:

*s/ William M. Conley*
WILLIAM M. CONLEY
District Judge